329 F.Supp. 283 (1971)
LOCAL LODGE 1746, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFLCIO, Petitioner,
v.
PRATT & WHITNEY DIVISION OF UNITED AIRCRAFT CORPORATION and Morgan R. Mooney, its Agent, Respondent.
Civ. No. 14330.
United States District Court, D. Connecticut.
June 11, 1971.
Norman Zolot, Hamden, Conn., for petitioner.
S. Robert Jelley, Wiggin & Dana, New Haven, Conn., for respondent.

RULING ON PETITION FOR ORDER REQUIRING OBEDIENCE TO SUBPOENA DUCES TECUM
CLARIE, District Judge.
The petitioner has made application to this Court for an order to compel the attendance of a corporate witness of the respondent-employer and the attendant production of Company personnel and investigatory records, pursuant to a subpoena duces tecum issued by an arbitrator sitting on a grievance hearing pursuant to their collective bargaining contract. The defendant has countered with a motion to dismiss the petition. The latter alleges that the Court lacked jurisdiction: (1) to act under § 301 of the Management Relations Act of 1947, 29 U.S.C. § 185 or § 7 of the United States Arbitration Act, 9 U.S.C. § 7 and Conn. Gen.Stat. § 52-412; (2) to enforce subpoenas which were originally issued under the authority of state law; (3) to *284 grant relief where the petitioner fails to state a lawful claim, and (4) because an improper party had brought the enforcement petition, since only the arbitrator himself could institute a proceeding to enforce such a subpoena. The case was submitted on the transcript of the arbitration hearings, affidavits and the Court pleadings with their attached exhibits. The Court finds that the arbitrator had the authority and the discretion to reopen the arbitration hearing and to subpoena all relevant evidence required for his adjudication of the issues.

FACTS
The Union and the employer-corporation were parties to a labor contract arrived at through collective bargaining. It provided for a grievance procedure to review the discharge or disciplinary suspension of an employee[1] for the misuse of paid working time. Three arbitrators were named in the contract, from which the parties were to select one; however, should the selection not be mutually agreed upon, the arbitrators would automatically serve successively pursuant to Article VII, § 3(g).
On February 2, 1970, the Union submitted to arbitration the discharge grievance of Ralph C. Gross. Arbitrator Roberts was selected as the arbitrator to hear the dispute. The issue submitted for adjudication stated:
"Was the discharge of Ralph Gross on December 4, 1969 for just cause? If not, what shall be the remedy?"
At the original hearing on February 25, 1971, counsel for the Union orally requested that the employer produce the Company's investigative file on Gross, No. 6904180[2] and the Union's demand was refused.[3] During its cross-examination of Gross, the Company did offer as exhibits several reports prepared by its investigators.[4] At the conclusion of the hearing, it was agreed that briefs should be filed within thirty days from the date of the receipt of the hearing transcript, but no mention was made concerning the Union's request for the issuance of a subpoena for the production of the defendant's investigative records, which it had declined to produce voluntarily.
Following the conclusion of the hearing and in the absence of the defendant's representative, petitioner's counsel again orally renewed his previous motion for the production of the subpoenaed records and the arbitrator agreed to issue a subpoena duces tecum. Petitioner's counsel promptly phoned the employer's hearing representative to acquaint him with the fact that the request was being renewed. The latter acknowledged being informed, but denied he had acquiesced in the request or consented to it.
The arbitrator subsequently issued the subpoena on March 2, 1971, covering the production of respondent's personal file No. 6904180, insofar as its contents related to the discharge of employee-Gross. The information file purportedly included confidential statements of management and that of other employees solicited by the respondent's investigators.
At the March 11, 1971 hearing, defendant's counsel challenged and resisted the subpoena as being a nullity, because the arbitration hearing had been closed on February 25, 1971, and the arbitrator's power to reopen the hearing and issue a subpoena after the hearing had been concluded was a nullity.[5] The arbitrator explained that the closing of the hearing had been a mistake on his part, because during the hearing he had already given the Union explicit permission to submit for his execution and issuance a subpoena ordering the production of the disputed papers from the Company's files. He observed that plaintiff's counsel had pointed out the error shortly after the *285 Company's personnel agent and a hearing representative had left the hearing room; and the arbitrator had specifically directed that the plaintiff's counsel telephone said agent and advise him of the pending matter. All of these directions were promptly carried out.[6]
An impasse developed in the hearing and the arbitrator ordered the case to be held in abeyance, pending a judicial determination of the subpoena's validity. The hearing record was thus kept open, so that further evidence could be offered, should either party decide to do so; and this procedure also protected the timely recording of any final decision.

DISCUSSION
The arbitrator's original jurisdiction over the parties or the subject matter in dispute has not been questioned. In fact the defendant-employer recently petitioned this Court to compel this same kind of arbitration procedure for the settlement of alleged grievances under this same labor contract. United Aircraft Corp. v. Canel Lodge No. 700, I. A. of M. & A. W., 314 F.Supp. 371 (D. Conn.) aff'd, 436 F.2d 1 (2d Cir. Dec. 11, 1970), cert. denied, 402 U.S. 908, 91 S.Ct. 1381, 28 L.Ed.2d 649. On that occasion, it was the employer who argued that this Court had the jurisdiction and authority under § 301 of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 185, to grant relief by ordering arbitration. In that case a hearing, similar to that presently being litigated, was ordered by the Court and consummated.
Where jurisdiction exists, both the case law and the Federal Arbitration Act itself confers upon this Court the authority and obligation to enforce lawful arbitration procedures. Title 9 of the United States Code, § 4 provides:
"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court * * * for an order directing such arbitration proceed in the manner provided for in such agreement."
This same Act prescribes in 9 U.S.C. § 7:
"The arbitrators selected * * * may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of any witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator * * * and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; * * *."
It has become a generally accepted principle, that federal district courts have jurisdiction to compel arbitration hearings, where the collective bargaining contracts so provide and jurisdiction of the parties exists.
"Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. * * *
"The grievance procedure is, in other words, a part of the continuous collective bargaining process." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). See also, United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).
To deny the Court the authority to sustain its jurisdiction in carrying out the enforcement of the arbitration process would totally frustrate the effectiveness *286 and purpose of the law. A procedural rule designed to facilitate the arbitration process should not be so magnified or distorted as to consume and destroy it.
As soon as the arbitrator's error was discovered, the petitioner's motion to reopen was made and the adversary party notified. No briefs had been filed, no decision had been rendered, and no one had been harmed by any change in position. Thus, the Company's posture was not prejudiced and no hardship was imposed. Under such circumstances, the arbitrator acting pursuant to his own discretion had the right, as well as the obligation, to reopen the hearing sua sponte to receive any evidence, which he deemed necessary and relevant to a fair, just, and knowledgeable disposition of the issues.
Generally speaking, a motion to reopen for presentation of additional evidence is addressed to the discretion of the judge or the hearings officer. This principle was stated in two important cases where permission to reopen was denied after entry of decision. NLRB v. Yale Mfg. Co., 356 F.2d 69 (1st Cir. 1966); Metal Blast, Inc. v. NLRB, 324 F.2d 602 (6th Cir. 1963). See also, Deering Milliken, Inc. v. Johnston, 295 F.2d 856 (4th Cir. 1961).
The arbitrator's reopening of the hearing and his subsequent issuance of the subpoena corrected his prior oversight and procedural mistake, in prematurely closing the evidentiary hearing. An arbitration hearing closed under a mutual mistake of fact of the arbitrator and the parties, is not closed at all and the arbitrator's subsequent actions to correct the error were well within his discretion. The employer's objection to the production of its investigation file because the arbitrator was without jurisdiction when he issued the subpoena is without merit.
The employer contends that the federal court may not enforce a state subpoena originally issued pursuant to state law (Conn.Gen.Stat. § 52-412), which was served in accordance with state procedural rules. It might also be observed that up to the present moment the employer has not moved to quash or otherwise modify the outstanding subpoena by any separate independent action or to challenge the relevancy of the records sought.
Had the arbitrator and plaintiff's counsel utilized the enforcement procedures prescribed by the Federal Arbitration Act, 9 U.S.C. § 7, we would not be confronted with the hybrid question of the federal court's authority to order the defendant's compliance with a state subpoena. The plaintiff elected to proceed through avenues afforded by state process; it is not now within this Court's prerogative to intervene and enforce that process.
Procedural niceties and technical obstructionism, however, with rare exception, should not be judicially nurtured; especially, is this true when lawful arbitration procedural remedies are already in progress. Livingston v. John Wiley & Sons, Inc., 313 F.2d 52, 63 (2d Cir. 1963), aff'd 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). This federal Court does have concurrent enforcement jurisdiction and possesses the necessary statutory authority (9 U.S.C. § 7) to enforce the procedures attendant upon the orderly consummation of this arbitration hearing. Atlantic Coast Line R. R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 296, 90 S.Ct. 1739, 26 L.Ed. 2d 234 (1969). Under this aegis, it will act sua sponte to sever the Gordian knot which created the impasse. The defendant shall produce forthwith the disputed file material for an in camera inspection by the arbitrator.
Such a procedure will, of course, deny to the plaintiff-Union its claim of a carte blanche discovery privilege, to peruse the employer's file. Arbitration has never afforded to litigants complete freedom to delve into and explore at will, the adversary *287 party's files under the pretense of pre-trial discovery.
"The Court agrees * * * that in a proceeding before arbitrators neither the statute nor the rules make available to any party thereto the discovery procedures provided in the Federal Rules of Civil Procedure." Foremost Yarn Mills, Inc. v. Rose Mills, Inc., 25 F.R.D. 9, 11 (E.D.Pa.1960). See also, International Union of Electrical Radio & Machine Workers v. Westinghouse Elec. Corp., 48 F.R.D. 298 (S.D.N.Y.1969); Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Co., 20 F.R.D. 359, 361 (S.D. N.Y.1957).
It must be assumed that the presiding arbitrator is an experienced person well versed in evaluating the alleged claims of the employer, that some files contain classified security information involving national defense or plant security, personal health records and other similar confidential data. All of this should be screened from the file, except where the arbitrator determines it to be relevant evidence in the dispute. Even in the latter instances, proper safeguards should be ordered, such as sealing the record or limiting its access to counsel only, so that no unnecessary harm or prejudice or unnecessary embarrassment may be caused to anyone.
"Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, `procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 aff'g 313 F.2d 52 (2d Cir. 1964).
Judgment shall enter for the plaintiff without costs to either party. So ordered.
The foregoing opinion shall constitute the findings of fact and conclusions of law required to be filed by the Court pursuant to Rule 52(a), Fed.R.Civ.P.
NOTES
[1] Petitioner's Exhibit "A", Art. VII § 3 (a) (1).
[2] Petitioner's Exhibit "F" at 20-24, 48-64; Affidavit of William H. McLaughlin, filed April 7, 1971.
[3] Petitioner's Exhibit "F" at 20, 21, 25-26, 53.
[4] Petitioner's Exhibit "F" at 64, 93-96.
[5] Petitioner's Exhibit "G" at 162.
[6] Petitioner's Exhibit "G" at 165, 167-170.