**AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, AFL–CIO, Plaintiff,**

**Warren Pierce, Plaintiff–Appellant,**

v.

**WJBK–TV (NEW WORLD COMMUNICATIONS OF DETROIT, INC.); A & M Specialists, Inc., Defendants–Appellees.**

No. 97–2079.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 29, 1998.

Decided Jan. 14, 1999.

Steven Z. Cohen, Bloomfield Hills, MI, for Plaintiff.

Steven Z. Cohen (argued and briefed), Frederick D. Elias, Cohen & Elias, Bloomfield Hills, MI, for Plaintiff–Appellant.

Herschel P. Fink, Honigman, Miller, Schwartz & Cohn, Detroit, MI, Mark E. Hunt (argued and briefed), King & Ballow, Nashville, TN, for WJBK–TV, New World Communications of Detroit, Inc.

Julie C. Mayer, Mark H. Fink (argued and briefed), Maddin, Hauser, Wartell, Roth, Heller & Pesses, Southfield, MI, for Defendant–Appellee.

Before: GUY, CLAY, and GILMAN, Circuit Judges.

GUY, J., delivered the opinion of the court, in which GILMAN, J., joined. CLAY, J. (pp. 1010–15), delivered a separate dissenting opinion.

## OPINION

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff, Warren Pierce, appeals from the district court's dismissal of this action seeking enforcement of a subpoena duces tecum issued to defendant A & M Specialists, Inc., by the arbitrator in a grievance proceeding between the American Federation of Television and Radio Artists, AFL–CIO (AFTRA or Union), and his former employer, defendant WJBK–TV (New World Communications of Detroit, Inc.) (WJBK).[1]  Pierce argues on appeal that the district court erred by refusing to enforce the subpoena under § 301 of the Labor Management Relations Act (LMRA) of 1947, 29 U.S.C. § 185, or § 7 of the Arbitration Act, 9 U.S.C. § 7. We agree and reverse the judgment of the district court.

## I.

Pierce was employed by WJBK as a news anchor, reporter, and talk show host, under an individual contract and a collective bargaining agreement. The collective bargaining agreement provided for "final, binding and conclusive" arbitration of grievances.[2] On November 30, 1995, WJBK terminated Pierce's employment. WJBK contends that, among other things, Pierce violated the terms of his contract and code of business conduct when he misused automobile privileges extended to him by certain automobile companies. Pierce grieved the discharge arguing, in part, that other media personalities guilty of similar abuses were not disciplined or discharged. The dispute was submitted to arbitration pursuant to the collective bargaining agreement.

A & M, which was not a party to the employment contract or the grievance, is in the business of maintaining, storing, and delivering automobiles to third persons, including media personalities, on behalf of various automobile manufacturers. Aside from the arbitrator's subpoena at issue in this case, Pierce made several other unsuccessful attempts to subpoena records from A & M. The arbitrator issued his subpoena on August 30, 1996, directing A & M to appear at the office of plaintiff's counsel on September 6, 1996, *and* at the arbitration hearing scheduled for September 13, 1996, and to produce records concerning the use of its vehicles by media personalities. A & M refused to comply and filed a petition to quash the subpoena with the district court. In response, Pierce

---

1. The complaint in this case, filed by AFTRA and Pierce against WJBK, asked not only for enforcement of the subpoena, but also for reinstatement. After WJBK filed a motion to dismiss, AFTRA and Pierce filed an amended complaint against both WJBK and A & M seeking only enforcement of the subpoena. The notice of appeal was filed by Pierce, only, and no cross-appeal was filed.

2. The arbitration provision from the collective bargaining agreement states that arbitration is to be conducted under the Voluntary Labor Arbitration Rules of the American Arbitration Association, which permit an arbitrator "authorized by law" to subpoena witnesses and documents independently or at the request of a party.

asked the district court to enforce the subpoena. The district court dismissed the action in February 1997, for failing to allege any basis for subject matter jurisdiction.

In June 1997, Pierce and the Union filed this action seeking once again to enforce the arbitrator's subpoena issued August 30, 1996. The district court ordered A & M to show cause why it should not be required to comply. Both WJBK and A & M filed motions to dismiss and the district court heard oral argument. In September 1997, the district court granted the defendants' motions to dismiss and denied the plaintiffs' request to enforce the subpoena. Finding that it had subject matter jurisdiction and authority to enforce the subpoena under § 301 of the LMRA, the district court nonetheless refused to enforce it on the grounds that the information was "irrelevant to the decision to be made by the arbitrator." The district court explained:

> The parties, through the arbitrator, may seek and obtain knowledge of what WJBK knew about the use and misuse, if any, of A & M-provided automobiles by other WJBK employees. This information will allow the arbitrator to answer the question whether WJBK treated Mr. Pierce any differently from other employees known to [have] been provided automobiles by A & M, if there are any such employees. The "everybody's doing it" defense is not relevant unless WJBK knew other WJBK employees, covered by the AFTRA contract, were engaged in behavior substantially similar to that for which Mr. Pierce was apparently terminated.
>
> That A & M provided automobiles to employees of media other than WJBK could only be relevant if WJBK knew this at a level of cognition sufficient to prompt a more moderate reaction to Mr. Pierce's alleged violation of company policy. This, too, is a matter of what WJBK knew and evidence of that must be obtained, at least in the first instance, from WJBK, the employer party to the collective bargaining agreement.

(Emphasis in original). Pierce appeals from this decision.

## II.

### A. Subject Matter Jurisdiction

■ The district court found that it had subject matter jurisdiction of this case under § 301 of the LMRA. We agree. Care must be taken in addressing the question of jurisdiction because this is an independent action, rather than a claim "embedded" in another controversy over which the district court already had subject matter jurisdiction. The amended complaint filed by Pierce and the Union specifically alleged that the court had jurisdiction arising under § 301 of the LMRA, § 7 of the FAA, and 28 U.S.C. §§ 1331 and 1332.[3] Plaintiffs also alleged that the grievance was being arbitrated pursuant to the collective bargaining agreement between the plaintiffs and WJBK.

■ District courts have federal question jurisdiction of cases "arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law when an issue of federal law appears on the face of a well-pled complaint. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). "Merely referring to a federal statute, however, does not establish federal jurisdiction if the dispute does not involve 'a substantial question of federal law.'" *Ford v. Hamilton Inv., Inc.*, 29 F.3d 255, 258 (6th Cir.1994) (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

■ Notwithstanding plaintiff's averments, it is well established that the Federal Arbitration Act does not create any independent federal question jurisdiction. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (The FAA creates "a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 (1976 ed. Supp. V) or otherwise.") Likewise, we have held that the federal nature of the underlying claims submitted to arbitration does not confer federal question jurisdiction over a suit to confirm an

---

**3.** Despite the reference to § 1332, there is no basis for diversity jurisdiction as both Pierce and A & M are citizens of Michigan.

arbitration award since the rights asserted "are actually based on the contract to arbitrate rather than on the underlying substantive claims." *Detroit Pension Fund v. Prudential Sec., Inc.,* 91 F.3d 26, 29 (6th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1252, 137 L.Ed.2d 333 (1997). *See also Smith Barney, Inc. v. Sarver,* 108 F.3d 92, 94 (6th Cir.1997); *Collins v. Blue Cross Blue Shield of Michigan,* 103 F.3d 35, 38 (6th Cir.1996); *Ford,* 29 F.3d 255.

█ In contrast with *Detroit Pension Fund, Smith Barney,* and *Collins,* the agreement to arbitrate in this case is part of a collective bargaining agreement governed by § 301 of the LMRA and, therefore, the agreement to arbitrate *itself* arises under federal law. Not only does § 301 of the LMRA confer jurisdiction over all suits "for violation of contracts between an employer and a labor organization," it is also a source of substantive law for the enforcement of collective bargaining agreements, including suits to compel arbitration. *See Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). In this case, Pierce and the Union sued the employer and A & M seeking to enforce a subpoena issued by an arbitrator in a grievance proceeding being conducted pursuant to a collective bargaining agreement. We find this action arises under § 301 of the LMRA.[4]

A & M argues that the district court lacked subject matter jurisdiction because A & M was not a party to the collective bargaining agreement and did not agree to arbitrate disputes with the Union, Pierce, or WJBK.[5] This argument begs the real question because the issue in this case is not whether A & M can be forced to arbitrate a dispute, but whether, as a non-party, it can be compelled to produce documents in the arbitration between Pierce and WJBK. As the Supreme Court has observed, "[t]he nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy. The relief in § 301 cases varies ... [b]ut the breadth or narrowness of the relief which may be granted under federal law in § 301 cases is a distinct question from whether the court has jurisdiction over the parties and the subject matter." *Avco Corp. v. Aero Lodge 735, Int'l Ass'n of Machinists,* 390 U.S. 557, 561, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). We find that the action seeking enforcement of the arbitrator's subpoena in a grievance conducted pursuant to a collective bargaining agreement arises under § 301 and, therefore, the district court had subject matter jurisdiction to decide the controversy.[6]

**B. Enforcement of Subpoena**

Pierce contends that the district court had authority to enforce the arbitrator's subpoe-

---

4. In one case, not cited by the parties, the district court found no jurisdiction in an action seeking to enforce an arbitrator's subpoena against non-parties to the collective bargaining agreement. While the court noted that the defendants were not parties to the contract, it actually concluded that "[i]n the absence of any mention of a collective bargaining agreement in the complaint, this Court has no jurisdiction under § 301 of the LMRA." *Local 639, Drivers, Chauffeurs & Helpers v. Seagram Sales Corp.,* 531 F.Supp. 364 (D.D.C. 1981). In this case, the amended complaint relies on the collective bargaining agreement between the Union and WJBK.

5. Although not mentioned by A & M, we and other courts have broadly stated that there is no subject matter jurisdiction over non-signatories to a collective bargaining agreement under § 301. *See Local 951, United Food and Commercial Workers v. Mulder,* 31 F.3d 365 (6th Cir. 1994); *Local 47, Serv. Employees Int'l Union v. Commercial Property Servs.,* 755 F.2d 499, 506 (6th Cir.1985). It is clear from examination of those cases, however, that this line of authority

does not address the issue presented here. Rather, the cases uniformly involve attempts to bind a non-signatory to an arbitration clause it did not agree to, *e.g., Mulder,* or suits *against* a non-signatory for tortious interference with the collective bargaining agreement, *see International Union, United Mine Workers v. Covenant Coal Corp.,* 977 F.2d 895, 897 (4th Cir.1992) (listing cases). None of these cases hold that a district court is without federal subject matter jurisdiction under § 301 over an action to enforce a subpoena issued by a labor arbitrator to a third party in an arbitration proceeding being conducted pursuant to a collective bargaining agreement.

6. The dissent characterizes this case as both "an attempt to bind a non-signatory to an arbitration clause to which it did not agree" and "little more than a suit against a non-signatory, A & M, for tortious interference with the arbitration clause of the contract." However, plaintiffs did not seek relief from A & M, or to compel A & M to arbitrate any dispute. Rather, this case, which is

na under either § 301 of the LMRA or § 7 of the FAA. The district court found that it had authority under § 301, relying upon *Wilkes–Barre Publishing Co. v. Newspaper Guild, Local 120,* 559 F.Supp. 875 (M.D.Pa.1982). We agree.

The Supreme Court, quoting from *Lincoln Mills,* reiterated that

the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws.... The Labor Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem.

*Avco,* 390 U.S. at 559, 88 S.Ct. 1235. Further, the Supreme Court in *United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 40 n. 9, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), expressly recognized that federal courts may look to the FAA for guidance in labor arbitration cases in the wake of the holding in *Lincoln Mills.* Thus, apart from the question of whether the FAA itself directly applies to the collective bargaining agreement in this case, we may find guidance in the FAA's provisions and in court decisions concerning a district court's power to enforce subpoenas under the FAA. As a result, it is not necessary to decide whether the FAA itself applies to Pierce's employment or the arbitration being conducted pursuant to the collective bargaining agreement.

Section 7 of the FAA explicitly provides that an arbitrator "may summon in writing any person to attend before them ... as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." Also, if the person summoned refuses or neglects to obey the summons, he may be compelled to appear, or punished for contempt, upon a petition to a federal district court. *See* 9 U.S.C. § 7. Just as the subpoena power of an arbitrator under the FAA extends to nonparties, a labor arbitrator conducting an arbitration under a collective bargaining agreement should also have the power to subpoena third parties. *See Wilkes–Barre,* 559 F.Supp. at 880 ("a decision to enforce an arbitrator's subpoena will promote the goals of labor policy if it will foster the effective operation of arbitration machinery"). In addition, the FAA's provision authorizing an arbitrator to compel the production of documents from third parties for purposes of an arbitration hearing has been held to implicitly include the authority to compel the production of documents for inspection by a party prior to the hearing. *See Meadows Indem. Co. v. Nutmeg Ins. Co.,* 157 F.R.D. 42 (M.D.Tenn.1994); *Stanton v. Paine Webber Jackson & Curtis, Inc.,* 685 F.Supp. 1241 (S.D.Fla.1988). We hold that under § 301, a labor arbitrator is authorized to issue a subpoena duces tecum to compel a third party to produce records he deems material to the case either before or at an arbitration hearing. We caution that this decision should not be read to mean that a party to the arbitration is entitled to any such discovery, only that a labor arbitrator may issue such a subpoena.[7]

This conclusion leads us to the question of whether the district court erred by

strictly collateral to the arbitration, was brought to enforce a labor arbitrator's subpoena seeking information from a third-party witness in an arbitration conducted pursuant to a collective bargaining agreement. Additionally, one of the reasons there is exclusive federal jurisdiction over § 301 actions is to help establish a uniform body of federal labor law. It seems inconsistent with this policy to say that a state court should be making a decision as to whether this subpoena is enforceable. The issue involving enforcement of this subpoena against a third party should be controlled by federal labor law.

7. We do not reach the question of whether an arbitrator may subpoena a third party for a discovery deposition relating to a pending arbitration proceeding. *See, e.g., Integrity Ins. Co. v. American Centennial Ins. Co.,* 885 F.Supp. 69 (S.D.N.Y.1995) (under the FAA, an arbitrator may *not* compel attendance of a non-party at a pre-hearing deposition, although the arbitrator may compel pre-hearing document production).

refusing to enforce the subpoena in this case based on its determination that the subpoenaed information was not relevant to the arbitration. In *Wilkes–Barre*, the court held that pursuant to the authority of § 301 of the LMRA, "subpoenas issued by labor arbitrators are, in appropriate circumstances, enforceable in the federal district courts." *Wilkes–Barre*, 559 F.Supp. at 882. The FAA authorizes an arbitrator to compel production of documents "which may be deemed material as evidence in the case." 9 U.S.C. § 7.

■ Consistent with federal labor policy, however, the relevance of the information and the appropriateness of the subpoena should be determined in the first instance by the arbitrator. In *Wilkes–Barre*, where the arbitrator expressly noted that he had made no evaluation of the relevance of the subpoenaed information, the district court declined to do so as well stating that "[i]t is not the function of this court to determine what an arbitrator would or should find relevant in resolving a dispute." *Wilkes–Barre*, 559 F.Supp. at 882. *See also Meadows*, 157 F.R.D. at 44 (district court noted that the arbitration panel had determined the documents were relevant to the proceedings and refused to "second guess" that conclusion). This court has even found that "when interpretation of a term in a collective bargaining agreement such as 'just cause' is at issue . . . an arbitrator's judgment as to whether evidence is or is not relevant is part of the bargain, and a court's power to disturb such discretionary determinations is quite limited." *National Post Office Mailhandlers v. United States Postal Serv.*, 751 F.2d 834, 841 (6th Cir.1985). *See Misco*, 484 U.S. at 36, 108 S.Ct. 364 ("courts play only a limited role when asked to review the decision of an arbitrator").

■ In this case, Pierce argued that the information concerning the use of vehicles from A & M by media personalities is relevant to the issue of whether his use of vehicles violated industry standards as well as his claim that WJBK did not discharge other employees for similar conduct. There is, however, no indication in the record that the arbitrator ever considered whether the information subpoenaed from A & M was relevant to the issues raised in the arbitration proceeding. At the same time, it appears that A & M did not raise its objections with the arbitrator. Furthermore, despite contemplating an in camera review of the subpoenaed records, the district court did not review them before declaring the information irrelevant. For these reasons, we find it was error for the district court to decide that the information was irrelevant to the proceeding and refuse to enforce the subpoena on that basis. As one district court aptly observed, "[i]t must be assumed that the presiding arbitrator is an experienced person well versed in evaluating the alleged claims of the employer," or, in this case the objections of A & M, and is capable of screening the material for what is relevant and ordering proper safeguards for the information. *Local Lodge 1746, Int'l Ass'n of Machinists v. Pratt & Whitney*, 329 F.Supp. 283, 287 (D.Conn.1971) (safeguards such as sealing the record or limiting access to counsel only).

The judgment is **REVERSED** and, given that more than two years have already passed since the subpoena issued, the district court is ordered to enter judgment compelling A & M to produce the documents directly to the arbitrator for in camera inspection along with any evidentiary objections A & M may have to the admission of those documents or to their further disclosure.

CLAY, Circuit Judge, dissenting.

By concluding that the District Court enjoyed subject matter jurisdiction over this case, the majority not only contravenes the clear precedent of this Court, but also makes this Court only the second federal court ever to issue an opinion finding, under § 301 of the Labor Management Relations Act ("LMRA"), subject matter jurisdiction over an action to enforce a subpoena arising from arbitration and directed at a non-signatory to that agreement.[1] I respectfully dissent.

---

1. The only other federal court to expressly find subject matter jurisdiction under § 301 over an action to enforce an arbitral subpoena against a non-party to a collective bargaining agreement is the District Court that decided this case. Although a few federal courts have enforced subpoenas arising from arbitration conducted pursuant to collective bargaining agreements, the subpoenas in those cases were directed at parties to the arbitration. *See, e.g., Wilkes–Barre Publ'g*

## I.

In their complaint, Pierce and the American Federation of Radio and Television Artists ("AFTRA") claimed that the District Court could assert subject matter jurisdiction over this enforcement action under § 301 of the LMRA, which gives federal courts jurisdiction over suits involving violations of contracts "between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a) (1998). Plaintiffs stated that WJBK–TV ("WJBK") discharged Pierce in violation of a collective bargaining agreement to which WJBK, AFTRA, and Pierce are parties, and that this collective bargaining agreement contained an agreement to arbitrate. Plaintiffs further stated that Pierce had, in accordance with the agreement to arbitrate, submitted his grievance to an arbitrator, that the arbitrator in turn had issued a subpoena to A & M Specialists, Inc. ("A & M"), and that A & M had refused to comply with the arbitral subpoena. Plaintiffs asked the District Court to order A & M to comply with that subpoena, and also to award costs and attorney fees against A & M. Plaintiffs did not allege that WJBK had played a role in A & M's failure to comply with the subpoena, and did not seek any form of relief against WJBK.

## II.

As the majority recognizes, it is well settled that the Federal Arbitration Act ("FAA") itself does not give rise to federal question jurisdiction. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460

U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Therefore, to obtain federal enforcement of a subpoena under the FAA, a plaintiff must plead upon the face of his complaint facts either giving rise to diversity jurisdiction[2] or stating a federal question apart from the FAA. *See Smith Barney, Inc. v. Sarver*, 108 F.3d 92, 95 (6th Cir.1997). The fact that an underlying claim is federal in nature cannot suffice to establish subject matter jurisdiction where the rights asserted in the action "are actually based on the contract to arbitrate rather than on the underlying substantive claims." *City of Detroit Pension Fund v. Prudential Sec. Inc.*, 91 F.3d 26, 29 (6th Cir.1996); *see also PCS 2000 LP v. Romulus Telecomms., Inc.*, 148 F.3d 32, 35 (1st Cir.1998) (finding no federal jurisdiction and thus inapplicability of FAA where federal statute referenced by claimants did not confer upon them a cause of action). Indeed, the mere recitation of a federal statute "does not establish federal question jurisdiction if the dispute does not involve a 'substantial question of federal law.'" *Ford v. Hamilton Invs.*, 29 F.3d 255, 257 (6th Cir.1994) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 28, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

The Supreme Court has long held that § 301 grants federal courts the specific power to enforce promises to arbitrate grievances contained within collective bargaining agreements. *See Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451, 77 S.Ct. 912 (1957). In accordance with the principles enunciated in *Lincoln Mills*, federal courts have enforced agreements to arbitrate con-

---

Co. v. Newspaper Guild, 559 F.Supp. 875, 882 (M.D.Pa.1982); *Local Lodge 1746, Int'l Ass'n of Machinists v. Pratt & Whitney*, 329 F.Supp. 283, 284 (D.Conn.1971). The handful of courts that have enforced such subpoenas against third parties have done so by assuming enforcement power under the Federal Arbitration Act without ever deciding the issue of whether they had subject matter jurisdiction under § 301. *See, e.g., Laufman v. Anpol Contracting*, 1995 WL 360015, at *1 (S.D.N.Y. June 13, 1995) (unpublished order); *Meadows Indem. Co. v. Nutmeg Ins. Co.*, 157 F.R.D. 42, 44 (M.D.Tenn.1994); *Stanton v. Paine Webber Jackson & Curtis*, 685 F.Supp. 1241, 1242 (S.D.Fla.1988).

**2.** The majority correctly observes that diversity jurisdiction does not exist in this case even

though Pierce and AFTRA cited 28 U.S.C. § 1332 in their complaint. Plaintiffs fail to satisfy the complete diversity requirement of § 1332 because they are not both diverse from Defendants. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). In fact, all of the parties in this case are citizens of Michigan. Pierce is a Michigan resident, and AFTRA is an unincorporated labor union with members who are citizens of Michigan. WJBK–TV maintains its principal place of business in Michigan, and A & M is a Michigan corporation. *See* 28 U.S.C. § 1332(c)(1) (stating that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business").

**1012**

tained within collective bargaining agreements as well as awards resulting from such arbitration. *See, e.g., Smith v. Union Carbide,* 350 F.2d 258, 261 (6th Cir.1965). Despite this willingness of federal courts to review and enforce labor agreements to arbitrate, only two courts other than the majority and the District Court in this case have explicitly concluded that they possessed the power under § 301 to enforce a subpoena arising from arbitration conducted pursuant to a collective bargaining agreement. *See Wilkes–Barre Publ'g Co. v. Newspaper Guild,* 559 F.Supp. 875, 882 (M.D.Pa.1982) [hereinafter *Wilkes–Barre II* ]; *Local Lodge 1746, Int'l Ass'n of Machinists v. Pratt & Whitney,* 329 F.Supp. 283, 284 (D.Conn. 1971). In finding that it had subject matter jurisdiction over the present action, the District Court relied exclusively on *Wilkes–Barre II.*

*Wilkes–Barre II* followed a decision by the Third Circuit which interpreted § 301 broadly to reach "not only suits on labor contracts, but suits seeking remedies for violation of such contracts." *Wilkes–Barre Publ'g Co. v. Newspaper Guild,* 647 F.2d 372, 380 (3d Cir. 1981) [hereinafter *Wilkes Barre I].* The district court in *Wilkes–Barre II* doubted its power under the FAA to enforce a subpoena arising from labor arbitration, but concluded that "pursuant to the authority embodied in section 301, subpoenas issued by labor arbitrators are, in appropriate circumstances, enforceable in the Federal District Courts." *Wilkes–Barre II,* 559 F.Supp. at 882. Although the court stated broadly that an arbitrator could subpoena "those materials he feels he must consider," *id.,* the case actually involved an attempt to obtain documents from a party to the grievance. *See id.* at 875. Informed by that fact, *Wilkes–Barre II* based its expansion of § 301 power partly on the notion that parties to a collective bargaining agreement have some obligation under the National Labor Relations Act to disclose information to one another. *See id.* at 881–82.

Although *Wilkes–Barre II* authorized enforcement of a subpoena directed against a party to the labor agreement, the majority affirms the District Court's reliance on the case to authorize enforcement of a subpoena directed against a corporation that is not a party to the labor agreement. In doing so, I believe the majority contravenes the clearly established law of this Court. Indeed, some courts, including the Third Circuit in *Wilkes–Barre II,* have held that § 301 provides jurisdiction over non-signatories to employment agreements in certain limited circumstances. *See, e.g., Painting & Decorating Contractors Ass'n v. Painters & Decorators Joint Comm.,* 707 F.2d 1067, 1071 (9th Cir.1983) (finding such jurisdiction proper only when resolution of the lawsuit is governed by the agreement); *Wilkes–Barre I,* 647 F.2d at 372. However, the Sixth Circuit has expressly rejected the reasoning employed by those courts and of the Third Circuit in *Wilkes–Barre II* in favor of a more limited interpretation of § 301. *See Service, Hosp., Nursing Home & Pub. Employees Union Local 47 v. Commercial Property Servs.,* 755 F.2d 499, 506 (6th Cir.), *cert. denied,* 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985).

*Commercial Property* rejected the notion that § 301 provides subject matter jurisdiction over all suits for violation of collective bargaining agreements, and instead adopted a narrower interpretation of the scope of § 301 jurisdiction. *See United Food & Commercial Workers v. Mulder,* 31 F.3d 365, 369 (6th Cir.1994) (following *Commercial Property* ). Specifically, we held "that a district court does not have subject matter jurisdiction over a non-signatory to a collective bargaining agreement, where no rights or duties of the non-signatory party are stated in the terms and conditions of the contract." [3] *Commercial Property,* 755 F.2d at 506. It is significant that we are not the only court to have come to this conclusion. *See United Mine Workers v. Covenant Coal Corp.,* 977 F.2d 895, 897 (4th Cir.1992); *Ramsey v. Sig-*

---

**3.** *Commercial Property* further distinguished *Wilkes–Barre II* on the grounds that it involved a non-signatory that had a "close relationship" with the party breaching the collective bargaining agreement. *See Commercial Property,* 755 F.2d at 507 n. 7. Indeed, we characterized as "tenuous" the relationship between a non-signa-

tory and a party to the collective bargaining agreement, where the non-signatory was "allegedly an alter ego" of the signatory. *Id.* In the present case, there exists no evidence to suggest that A & M had a contractual or otherwise close relationship with WJBK.

*nal Delivery Serv.*, 631 F.2d 1210, 1212 (5th Cir.1980). Given the law of this Court, the District Court could not have enjoyed subject matter jurisdiction under § 301 over an arbitral subpoena directed at a non-party to the underlying collective bargaining agreement, unless that agreement referenced the duties of A & M. From the record before us, the collective bargaining agreement signed by WJBK, AFTRA, and Pierce does not set forth any rights or duties of A & M.

The majority dismisses this Court's decisions in *Commercial Property* and *Mulder* in a footnote, asserting that those cases "uniformly involve attempts to bind a non-signatory to an arbitration clause it did not agree to, *e.g., Mulder,* or suits against a non-signatory for tortious interference with the collective bargaining agreement...."[4] The significance of these distinctions eludes me. The present case is precisely an attempt to bind a non-signatory, A & M, to an arbitration clause to which it did not agree, in that it seeks to require A & M to play by the rules of that arbitration clause and to submit its defenses against the subpoena to an arbitrator. Moreover, the present case is little more than a suit seeking relief in the form of an order compelling the production of documents against a non-signatory, A & M, resulting from tortious interference with the arbitration clause of a collective bargaining agreement.[5] Indeed, the complaint in this case does not seek relief against WJBK, the only Defendant that was a party to the agreement to arbitrate.[6] Rather, the complaint alleges, in essence, that A & M has, by refusing to comply, prejudiced Pierce's ability to arbitrate his grievance in accordance with his collective bargaining agreement with WJBK. Indeed, a cause of action cannot claim federal subject matter jurisdiction merely by virtue of artful pleading. *See, e.g., Miller v. Norfolk & W. Ry. Co.,* 834 F.2d 556, 562 (6th Cir.1987).

Finally, the majority argues that enforcement of the subpoena in this case "should be controlled by federal labor law" since federal courts enjoy "exclusive federal jurisdiction over § 301 actions ... to help establish a uniform body of federal labor law." However, federal jurisdiction under § 301 "preempts local law so that a uniform body of federal labor law can be developed *to avoid conflicts in the interpretation of collective bargaining agreements.*" See *Terwilliger v. Greyhound Lines, Inc.,* 882 F.2d 1033, 1036 (6th Cir.1989) (citing *Teamsters v. Lucas Flour,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)) (emphasis added). As we have observed, the need to create a "uniform body of federal labor law" and § 301 do not require federal adjudication of "lawsuits that assert rights created independent of collective-bargaining agreements, but related to them in some way." *Michigan Mut. Ins. Co.*

4. The majority suggests that the real "issue in this case is not whether A & M can be forced to arbitrate a dispute, but whether, as a non-party, it can be compelled to produce documents in the arbitration between Pierce and WJBK." I respectfully disagree with the majority's characterization of this issue. Indeed, the question of subject matter jurisdiction does not involve the merits of whether A & M must in fact produce documents. Rather, the issue of subject matter jurisdiction concerns only whether federal courts, as opposed to state courts, may require A & M to comply with the subpoena. *Cf. Musson Theatrical Inc. v. Federal Express,* 89 F.3d 1244, 1252 (6th Cir.1996) (recognizing that federal courts are courts of limited jurisdiction and that powers not given to federal courts by Congress are left to the state courts).

5. This characterization of Pierce's case does not necessarily make it federal. We have recognized that a claim of tortious interference with a collective bargaining agreement generally lies in state law. *See Dougherty v. Parsec, Inc.,* 872 F.2d 766, 769–70 (6th Cir.1989) (holding that § 301 only preempts a state law cause of action based

on tortious interference with a labor agreement where courts must interpret the contract to resolve the claim).

6. Accordingly, I question whether WJBK is a proper party in this lawsuit. In order to establish the "irreducible constitutional minimum" of standing necessary to invoke federal jurisdiction, a plaintiff must show that his injury is fairly traceable to the conduct of the defendant and that a judicial decision against that defendant will redress the injury. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A party does not have standing to sue a party when his injury actually results from the independent action of some third party. *See Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). In this case, Plaintiffs have not alleged facts showing that WJBK caused A & M to fail to comply with the arbitrators subpoena. Nor could the District Court have awarded any relief as to WJBK that would have redressed Pierce's alleged injury.

*v. United Steelworkers,* 774 F.2d 104, 106 (6th Cir.1985). Moreover, the Court has recognized that a claim is "independent" of a collective bargaining agreement when its resolution "does not require construing the collective bargaining agreement." *See Lingle v. Norge Div. of Magic Chef,* 486 U.S. 399, 407, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Indeed, allowing state courts to review matters that relate to but do not require interpreting a collective bargaining agreement does not conflict with "the policy of fostering uniform, certain adjudication of disputes over the meaning of collective bargaining agreements...." *Id.* at 410–11, 108 S.Ct. 1877.

In my view, Pierce seeks to enforce a subpoena against a party that he could not sue under § 301 in the federal courts of this circuit—a party that was not a signatory to the collective bargaining agreement. Although Pierce's underlying claim of termination in violation of a collective bargaining agreement is federal in nature and although his complaint recites § 301, this particular dispute does not present a federal question under § 301. Indeed, under the reasoning I have set forth, I may have concluded otherwise if Pierce could properly claim another basis for federal jurisdiction over his action, if his employment contract or arbitration agreement included some reference to the rights and duties of A & M, or if enforcement of the subpoena in this case depended on an interpretation of Pierce's collective bargaining agreement. However, as presented, Pierce's action, in my view, falls squarely within this Court's pronouncements in *Commercial Property* and *City of Detroit Pen-*

sion Fund.[7] Accordingly, I disagree with the majority and find erroneous the District Court's exercise of subject matter jurisdiction over the action in this case.

### III.

Although I conclude that federal courts lack subject matter jurisdiction over this case, I do not believe that the subpoena issued in this case is altogether unenforceable. Rather, I believe that Pierce could have sought enforcement of this subpoena in state court.[8] As state courts have themselves recognized, they "are bound under the Supremacy Clause, U.S. Const., art. VI, § 2, to enforce the substantive provisions" of the FAA. *Burns v. Olde Discount Corp.,* 212 Mich.App. 576, 538 N.W.2d 686, 688 (Mich. Ct.App.1995). An action in state court to enforce an arbitral subpoena would have released Pierce from the requirement that he plead an independent basis for federal jurisdiction.

Moreover, I believe the FAA mandates enforcement of the subpoena at issue in this case. Indeed, § 7 of the FAA provides that arbitrators "may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring ... any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7 (1998). The FAA also grants the authority to compel the attendance of such witnesses when they refuse or do not obey the summons of an arbitrator. *See* 9 U.S.C. § 4 (1998). Although the majority declined to address the application of the FAA to this case,[9] I believe Pierce could

---

**7.** The majority claims that *City of Detroit Pension Fund* does not apply to the case at hand because "the agreement to arbitrate in this case is part of a collective bargaining agreement governed by § 301 of the LMRA and, therefore, the agreement *itself* arises under federal law." However, this fact does not automatically render Pierce's claim against A & M a federal question. *Cf. Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (noting that § 301 does not preempt "every dispute ... tangentially involving a provision of a collective-bargaining agreement"). Plaintiffs cannot change the fact that their actual claim does not involve or arise from a breach of the collective bargaining agreement merely by reciting the agreement in their complaint. *See Ford,* 29 F.3d at 258.

**8.** Since Pierce and A & M share Michigan citizenship, I see no reason why Michigan state courts could not exercise personal jurisdiction over A & M. Pierce's prior encounters with the state courts apparently did not relate to enforcement of the subpoena at issue in this case and thus did not implicate the FAA. Instead, they involved an attempt to obtain the same materials as pre-suit discovery for a suit against BMW.

**9.** Instead, the majority further broadens § 301 by declaring broadly that "under § 301, a labor arbitrator is authorized to issue a subpoena duces tecum to compel a third party to produce records he deems material to the case either before or at an arbitration hearing." The basis for such a holding is unclear, however, where § 301 itself does not even "authorize" arbitration. 29 U.S.C. § 185 (1998). Furthermore, the Supreme Court has unequivocally characterized

 

have demonstrated to state courts that the FAA authorized the arbitrator in his case to issue a legally enforceable subpoena to A & M. As we have held, the FAA covers arbitration clauses in "contracts for employment" including collective bargaining agreements. *See Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592, 599 (6th Cir.1995).[10] Under this Court's narrow interpretation of the FAA's exclusion clause, the FAA would not exclude from its grasp the type of collective bargaining agreement at issue in this case.[11] *See id.* at 601; *DeCaminada v. Coopers & Lybrand,* 1998 WL 801933, at *2 (Mich.Ct.App. Nov.17, 1998). Finally, state courts should grant an arbitrator's judgment the same kind of deference that federal courts must under the FAA. *See, e.g., National Post Office Mailhandlers, Watchmen, Messengers & Group Leaders v. United States Postal Serv.,* 751 F.2d 834, 841 (6th Cir.1985) (noting that "a court's power to disturb such discretionary determinations is quite limited").

## IV.

I believe that the District Court and the majority have improperly exercised subject matter jurisdiction over this action. In so doing, they have contravened the clearly established law of this Court and have unnecessarily expanded the scope of federal jurisdiction under § 301 in deciding a case that should have been resolved by the state courts. For these reasons, I respectfully dissent.

---

labor arbitration as a bargained-for procedure. *See Gilmer v. Interstate/Johnson Lane,* 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (observing that parties may agree upon arbitration rules that allow for discovery). Even assuming that federal courts may enforce subpoenas issued by a labor arbitrator to third parties, that single power could not, without more, allow this Court to expand the powers of arbitrators for which independent parties contract. To the extent that Congress wished to supplement bargained-for arbitral procedure, it enacted the Federal Arbitration Act.

10. Defendants claim that this Court overruled *Asplundh* in a footnote less than one year later in *Wedding v. University of Toledo,* 89 F.3d 316, 319 n. 2 (6th Cir.1996) (stating, without citation to *Asplundh,* that the "FAA ... does not apply to labor contracts"). I disagree. While commenting that it was unnecessary for the lower court to

conduct FAA analysis, the panel in *Wedding* affirmed the lower court without any further instruction. Since the *Wedding* footnote amounted to dicta that was not essential to the judgment in that case and that cannot bind this Court, *see Marlene Indus. Corp. v. NLRB,* 712 F.2d 1011, 1016 (6th Cir.1983), I believe *Asplundh* remains the law of this Court regarding the proper interpretation of § 1 of the FAA.

11. Courts faced with similar factual scenarios have declined to exclude employment contracts under § 1 of the FAA. *See, e.g., Rojas v. TK Communications, Inc.,* 87 F.3d 745, 748 (5th Cir.1996) (following *Asplundh* and holding that § 1 did not exclude the employment contract of a disc jockey at a radio station); *Powers v. Fox Television Stations,* 923 F.Supp. 21, 24 (S.D.N.Y. 1996) (holding that § 1, narrowly construed, did not exclude employment contract of television news reporter).